UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LORENZO MARTINEZ,

                    Petitioner,

          -against-                    01 Civ. 11570 (DAB)(JCF)
                                       PARTIAL ADOPTION AND
WALTER KELLY, Superintendent,          MODIFICATION OF REPORT
Attica Correctional Facility;          AND RECOMMENDATION
ELLIOT SPITZER, Attorney General,
State of New York; and ROBERT M.
MORGENTHAU, District Attorney,
County of New York,

                    Respondents.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     On April 15, 2003, United States Magistrate Judge James C.

Francis issued a Report and Recommendation ("Report"),

recommending that Petitioner's Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2254 be denied in its entirety. (Report

at 26).

     Pursuant to 28 U.S.C. § 636(b)(1)(C), "[w]ithin ten days

after being served with a copy, any party may serve and file

written objections to such proposed findings and

recommendations."  28 U.S.C. § 636(b)(1)(C); see also F.R.C.P.

Rule 72(b) (stating that "[w]ithin 10 days after being served

with a copy of the recommended disposition, a party may serve and

file specific, written objections to the proposed findings and

recommendations").  Where no timely objection has been made, "a

district court need only satisfy itself there is no clear error

on the face of the record." <u>Nelson v. Smith</u>, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985). After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); <u>see also</u> Local Civil Rule 72.1(d). Petitioner has raised seven objections to Judge Francis' Report. The Court will therefore review the objected-to portions of the Report <u>de novo</u>.

The facts in this matter are largely set forth in the Report and will not for the most part be reiterated here.

## I. PETITIONER'S OBJECTIONS

A.    Background Section of the Report

Petitioner takes issue with several factual assertions contained in the Background section of the Report. First, Petitioner contests statements on page two of the Report that (1) his brother Rafael operated the Jheri Curls drug gang with his assistance and (2) he approved prospective drug customers and coordinated the gang's operations in Rafael's absence, because, he argues, these purported facts were based on the uncorroborated testimony of accomplices who were offered leniency in exchange for their testimony. (Petitioner's Exceptions to the Magistrate Judge's Report and Recommendation ["Pet. Obj."] at 1-2).

However, New York City police officers who had observed the Jheri Curls gang's activities for several months also testified that Rafael Martinez was the gang's leader and that his brothers often performed his duties when he was absent. (See Trial Transcript ["Tr."] at 1215-1216 (Testimony of NYPD Officer James Gilmore), 1628, 1643 (Testimony of Detective Robert Mooney)). Moreover, while New York law bars a criminal conviction based solely on uncorroborated accomplice testimony, see N.Y. Crim. Proc. Law § 60.22, state law questions are irrelevant in the context of federal habeas review, see Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 375 (1991), and there is no federal Constitutional prohibition against a judicial factual finding based solely on uncorroborated accomplice testimony. Lisbena v. California, 314 U.S. 219, 226-27, 62 S.Ct. 280, 86 L.Ed. 166 (1941). Thus, there is nothing improper about Judge Francis' factual finding regarding Petitioner's role in the Jheri Curls gang.

Petitioner also contests the statements on page three of the Report that he (1) participated in the murder of a man named Chino and (2) sold more than four ounces of cocaine to an undercover police officer, two crimes for which he was convicted at his state criminal trial. (Pet. Obj. at 2-3). However, Petitioner provides no grounds for his objection to the statement

about the murder of Chino, declaring simply that he "denies" such assertion. (Id.).  In addition, his contention that the statement about his sale of cocaine to an undercover officer is based on an unfair reading of the trial transcript is unpersuasive given that the jury in his state trial convicted him of this offense based on the very testimony contained in the transcript.  Finally, to the extent Petitioner is claiming that these two convictions were based on insufficient evidence, such claim, as discussed below, is procedurally barred, and thus Petitioner is precluded from now raising such objection with this Court.

Petitioner also objects to the Report's "selective[]" recital of the facts surrounding the trial court's handling of Petitioner's Batson challenge. (Pet. Obj. at 3).  Specifically, Petitioner contends that a full reading of the relevant portions of the transcript shows that the trial court itself "assumed the role of the prosecutor and assigned race neutral reasons" for the latter's peremptory strikes of four black prospective jurors. (Id.).  Petitioner is correct that portions of pages 665, 666, and 668 of the jury selection transcript-which Judge Francis did not mention in his account of Petitioner's Batson challenge on page five of the Report- clearly indicate that the trial court, rather than the prosecution, provided race neutral reasons for the exclusion of two of the four stricken black jurors, Miss

Carmichael and Miss Cherry.  On these pages of the transcript, the trial Court explained that Miss Carmichael "appeared to be somewhat out of it" and was not "totally rational" or "totally of this world" (Tr. at 665-66), and that Miss Cherry was "certainly a bizarre person who not only dressed in a strange manner, but seemed to be a little strange herself." (<u>Id</u>. at 668).  Moreover, the Report fails to mention that the trial court's finding that there was no pattern of discriminatory juror challenges on the part of the prosecution was based on the fact that "two of the four black jurors challenged were people who had obvious problems." (<u>Id.</u> at 669-70).

Accordingly, this Court takes notice of the fact that the trial court itself provided race neutral reasons for the prosecution's peremptory challenges of black prospective jurors prior to ruling on whether the Petitioner and other defendants had made a <u>prima facie</u> showing of a <u>Batson</u> violation.

B.    Procedural Default of Judicial Bias Claim

Petitioner objects to Judge Francis' finding that he procedurally defaulted on his judicial bias claim by failing to "fairly present" it on direct appeal to the New York State Appellate Division or Court of Appeals. (Pet. Obj. at 3).

A federal court may not consider a petition for a writ of habeas corpus by a person in state custody "unless it appears that the [petitioner] has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). To satisfy this exhaustion requirement, a petitioner must generally "fairly present" his federal habeas claim to the highest court of the pertinent state. <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); <u>Grey v. Hoke</u>, 933 F.2d 117, 119 (2d Cir. 1991); <u>Bossett v. Walker</u>, 41 F.3d 825, 829 (2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). However, because the exhaustion requirement "refers only to remedies still available at the time of the federal petition, . . . it is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." <u>Gray v. Netherland</u>, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (citations and internal quotations omitted). Yet, the same procedural bar that gives rise to exhaustion "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate case and prejudice for the default." <u>Id.</u> (citations omitted).

To "fairly present" a federal constitutional claim to a state court, a habeas petitioner must "alert[]" each appropriate

state court to the "federal nature of the claim" so that such court has the "'opportunity to pass upon and correct alleged violations of [the petitioner's] federal rights.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (quoting <u>Picard</u>, 404 U.S. at 275). Thus, when presented to a state court, a federal habeas claim "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." <u>Gray v. Netherland</u>, 518 U.S. at 162-63 (citing <u>Picard</u>). However, a petitioner may "fairly present the substance of a federal constitutional claim to the state court without citing 'book and verse on [sic] the federal constitution,'" and "[t]he requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court is the 'substantial equivalent' of that of the habeas claim." <u>Daye v. Attorney General of the State of New York</u>, 696 F.2d 186, 192 (2d Cir. 1982) (quoting <u>Picard</u>, 404 U.S. at 278).

The Second Circuit has enumerated four ways in which a habeas petitioner may fairly present the federal constitutional nature of his claim to the state courts even without citing "chapter and verse of the Constitution":

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases

7

employing constitutional analysis in like fact situations,
(c) assertion of the claim in terms so particular as to call
to mind a specific right protected by the Constitution, and
(d) allegation of a pattern of facts that is well within the
mainstream of constitutional litigation.

Daye, 696 F.2d at 194; McKinney v. Artuz, 326 F.3d 87, 97 (2d

Cir. 2003) (same) (quoting Daye).[1]

In the present case, Judge Francis concluded that Petitioner

(1) failed to present his judicial bias claim fairly on direct

appeal to the Appellate Division and Court of Appeals, (2) is

procedurally barred under New York Criminal Procedure Law §

440.10(c)(2) and N.Y. Court of Appeals Rule 500.10(a) from now

obtaining review of such claim in the Court of Appeals, and (3)

---

[1] In their response to Petitioner's Objections, Respondents argue
that the four-prong "fair presentation" test established in Daye
has been eclipsed by a "stricter test of fair presentation"
established by the Supreme Court in Gray v. Netherland, 518 U.S.
at 162-63, which requires "'reference to a specific federal
constitutional guarantee, as well as a statement of facts that
entitle the petitioner to relief.'" (Respondents' Letter to the
Court, dated June 2, 2003, at 1). However, this Court sees no
inconsistency between any of the four methods for fair
presentation mentioned in Daye and the standard set forth in
Gray. Moreover, the Second Circuit has continued to apply the
Daye criteria in post-Gray cases. See Ramirez v. Attorney General
of the State of New York, 280 F.3d 87, 95-96 (2d Cir. 2001)
(holding that habeas petitioner fairly presented Sixth Amendment
ineffective assistance of counsel claim to New York Court of
Appeals where letter application to that court "put forward a
pattern of facts that is well within the mainstream of
constitutional litigation'"); Jackson v. Edwards, 404 F.3d 612,
619 (2d Cir. 2005) (affirming district court's finding that
habeas petitioner fairly presented his federal due process claim
regarding improper jury instructions to New York Appellate
Division by "alleg[ing] pattern of facts. . . well within the
mainstream of constitutional litigation").

his judicial bias claim is therefore procedurally defaulted and "barred from federal review." (Report at 12-13). Petitioner, however, contends that the brief he submitted to the Appellate Division on direct appeal "[a]t minimum. . . alleged a pattern of facts within the mainstream of constitutional litigation involving the absence of a fair trial because of judicial bias," which satisfies the fourth prong of the <u>Daye</u> fair presentation test. (Pet. Obj. at 5).

This Court agrees with Petitioner. In his brief to the Appellate Division, Petitioner asserted that the trial court "failed in its duty" to "remain neutral, make appropriate rulings of law, and to guarantee [him] a fair trial. . . in that it continuously interfered with the progress of the case, demonstrated its pro-prosecution, anti-defense bias, harassed [co-defendant's] counsel, and engaged in demeaning and degrading behavior" that "injected a harmful and prejudicial element into the trial" and "could not but have affected the jury." (Appendix in Support of Answer Opposing Petition for a Writ of Habeas Corpus ["App."], Ex. C (Petitioner's Brief to the Appellate Division) at 84). "The contention that the trial judge's evident partiality and his assumption of a hostile and prosecutorial stance deprived [Petitioner] of a fair trial was sufficient to alert the state court that a federal due process claim was being

asserted." <u>Daye</u>, 696 F.2d at 196; <u>see also</u> <u>Gumbs v. Kelly</u>, No. 97
Civ. 8755, 2000 WL 1172350, at *3-4 (S.D.N.Y. Aug. 18, 2000)
(holding that petitioner had fairly presented a federal
constitutional judicial bias claim to the New York Appellate
division on direct appeal where his appellate brief stated that
"the trial court's continuous condemnation of . . . counsel and .
. . the hostile atmosphere created by the court's actions" denied
him a "fair trial").

Citing <u>Deleon v. Duncan</u>, No. 99 Civ. 9086, 2002 WL 1997892
(S.D.N.Y. Aug. 28, 2002), Judge Francis found that "simply
referring to the right to a fair trial" without citing the United
States Constitution or federal cases to support such claim "is
not sufficient to put a state court on notice that a federal
constitutional claim is being made." (Report at all).  This is
especially true with respect to a judicial bias claim, Judge
Francis reasoned, since the New York State Constitution's
guarantee of the right to a fair trial is "not coextensive with
that afforded by the United States Constitution." (<u>Id.</u> n.4).
However, the New York Court of Appeals case Judge Francis cites
in  support of this second proposition, <u>People v. Vilardi</u>, merely
held that federal constitutional due process standards differed
from New York law specifically on the question of a prosecutor's
obligation to disclose exculpatory evidence, not on all aspects

of the right to a fair trial. 76 N.Y.2d 67, 75-77, 556 N.Y.S.2d 518 (1990).  Further, given the holdings in Daye and Gumbs v. Kelly, the Court finds the ruling in DeLeon on fair presentation of a judicial bias claim unpersuasive.

In addition, even if Petitioner's factual allegations of judicial bias in his brief to the Appellate Division do not by themselves constitute fair presentation of a federal due process claim, the brief cited two New York Court of Appeals cases that employed federal constitutional analysis of judicial bias.  As the Second Circuit noted in Daye, the discussions of judicial bias and harmless error in People v. DeJesus, 42 N.Y.2d 519, 399 N.Y.S.2d 196 (1977), and People v. Crimmins, 36 N.Y.2d 230, 367 N.Y.S.2d 213 (1975), cited on pages 85 and 86 of Petitioner's Appellate Division brief, "show that New York courts view a defendant's right to a fair trial as one of constitutional dimension, and view a claim of excessive and biased judicial intervention in the trial as implicating that right to a fair trial." Daye, 696 F.2d at 196.  Thus, Petitioner's "citations of those two cases in the context of his factual assertions" of judicial bias were also "sufficient to give [the Appellate Division] notice that he asserted a constitutional claim." Id. Accordingly, the Court finds that, under either the second or fourth Daye prong, Petitioner fairly presented to the Appellate

Division the same judicial bias claim that he now asserts in his habeas petition.

Similarly, in his application for leave to appeal his conviction to the New York Court of Appeals, Petitioner (1) asserted that the trial court's hostile treatment of his co-defendant's attorney and "the pro-prosecution prejudice that permeated the entire trial" denied Petitioner his right to a fair trial, and (2) cited both <u>DeJesus</u> and <u>Crimmins</u> in discussing the legal doctrine governing his judicial bias claim. (Petitioner's Letter in Reply to Respondents' Opposition to his Application for Leave to Appeal to the Court of Appeals, dated October 26, 1998, at 2-3). Thus, Petitioner also fairly presented his judicial bias claim to the highest court of New York State, and this Court must therefore consider the merits of such claim.

As an initial manner, because the Appellate Division addressed and rejected the Petitioner's judicial bias claim on the merits, (<u>see</u> App., Ex. G (Appellate Division Order) at 69), this Court may not grant habeas corpus relief on such claim unless the Appellate Division's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] A state court decision is

_____

[2] While the Appellate Division did not cite to the federal Constitution or relevant federal case law, its denial of

"contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 289 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." <u>Id.</u> An unreasonable application of federal law is "different from an incorrect or erroneous application of federal law." <u>Id.</u> at 412. The standard "falls somewhere in between merely erroneous and unreasonable to all reasonable jurists; . . . some increment of incorrectness beyond error is required." <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000).

A criminal conviction may only be reversed on grounds of judicial bias "if 'the judge's behavior was so prejudicial that it denied a fair, as opposed to a perfect, trial.'" <u>United States v. Amiel</u>, 95 F.3d 135, 146 (2d Cir. 1996) (quoting <u>United States</u>

---

Petitioner's judicial bias claim was based on the "substance of the claim," and as such, constituted a decision on the merits for § 2254(d)(1) purposes. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001)

**v. Robinson**, 635 F.2d 981, 984 (2d Cir. 1980), **cert. denied**, 451
U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981)).  It is not for
the reviewing court to determine "whether the trial judge's
conduct left something to be desired, or even whether some
comments would have been better left unsaid." **Amiel**, 95 F.3d 146
(citing **United States v. Pisani**, 773 F.2d 397, 402 (2d Cir.
1985)).  Instead, "[t]he test is whether the jury was so
impressed with the judge's partiality to the prosecution that it
became a factor in determining the defendant's guilt. . . or
whether it appeared clear to the jury that the court believed the
accused is guilty." **Id.**  Moreover, when analyzing the prejudicial
effect of a trial judge's comments, the reviewing court must not
judge such comments in isolation but must instead make "an
examination of the entire record, in order to determine whether
the defendant received a fair trial." **Mickens v. United States**,
926 F.2d 1323, 1327 (2d Cir. 1991) (citations and internal
quotations omitted), **cert denied**, 502 U.S. 1060, 112 S.Ct. 940,
117 L.Ed.2d 111 (1992).

     Certain factors may also mitigate the prejudicial effect of
a trial judge's remarks.  For example, a trial court's negative
comments to or about defense counsel are typically not viewed as
compromising the fairness of a trial where they were provoked by
defense counsel himself. **See** **Mickens**, 926 F.2d at 1327 (rejecting

criminal defendants' judicial bias based on trial court's admonitions of one defendant's counsel where such admonitions were "provoked to some extent" by that same defense counsel); Robinson, 635 F.2d at 985 ("[M]isconduct by defense counsel may properly be taken into account by us in determining whether a defendant was prejudiced by the judge's response.") (citations omitted). In addition, the prejudicial effect of a trial court's comments "can be cured by the court's cautionary instruction" to the jury. Mickens, 926 F.2d at 1327-28 (citing United States v. Bejasa, 904 F.2d 137, 141 (2d Cir. 1990), cert. denied, 498 U.S. 921, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990)). Finally, a trial court's anti-defense comments made outside the presence of the jury will not be deemed to have affected the fairness of a trial. See United States v. Logan, 998 F.2d 1025, 1029 (2d Cir. 1993), cert. denied, 510 U.S. 1000, 114 S.Ct. 569, 126 L.Ed.2d 469 (1993); Pisani, 773 F.2d at 404; Robinson, 635 F.2d at 984-85.

In his Petition Petitioner alleges that the trial court was unconstitutionally biased against him and his co-defendants in two respects. First, the trial court allegedly made numerous rude and offensive comments to and about defense counsel, particularly co-defendant Rafael Martinez's attorney, Richard Giampa. (Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus ["Pet. Mem."] at 42-49). Second, the

trial court frequently "interfered" with defense counsel's cross examination of prosecution witnesses. (Id.).

However, the trial record, when viewed as a whole, indicates that the prejudicial effect of the trial court's allegedly biased statements and conduct on Petitioner was significantly mitigated by the aforementioned factors. First, many of the trial court's remarks to Giampa and its interjections during his and other defense counsel's cross-examination of prosecutions witnesses were made in response to Giampa's repeated refusals to comply with the court's rulings and directives and the combative tone he often took towards the court. (See, e.g., Tr. at 532, 618, 621, 626, 1237-1246, 1434-36, 2178-2200, 3002-03, 2084-85, 3099-3105, 3345-47, 3628-45, 4346, 4512-18, 5538-42, 9213-18). Indeed, Giampa's conduct was so egregiously inappropriate that the New York Appellate Division, in a separate attorney disciplinary proceeding following the trial, sustained a charge of criminal contempt of court against him for his behavior during the trial. See Matter of Giampa, 211 A.D.2d 212, 324-25, 628 N.Y.S.2d 323 (2d Dep't 1995). Further, the trial court repeatedly instructed the jury that neither Giampa's behavior nor the court's exchanges with defense counsel should be held against any of the defendants. (Tr. at 2752-53, 3104-05, 3851, 4240-41, 5687, 7613). Finally, many of the trial court's purportedly hostile remarks

16

about defense counsel were made outside the presence of the jury. (<u>Id.</u> at 1244-45, 1248, 1280, 1546-50, 1552, 1711, 1996, 2000, 2520-2522, 2745-46, 3857,4345-46, 5975-77).

Given the presence of these mitigating factors, the Appellate Division's finding that the trial court did not deprive him of a fair trial is therefore consistent with the above-cited Second Circuit case law on judicial bias.  Accordingly, under 28 U.S.C. § 2254(d)(1), Petitioner is not entitled to habeas corpus relief on his judicial bias claim.

C.    Procedural Default of Defective Jury Charge Claim

Petitioner also contests Judge Francis' finding that he procedurally defaulted on his improper jury charge claim. Specifically, Petitioner contends that he fairly presented this claim in his brief to the Appellate Division by alleging "a pattern of facts well within the mainstream of constitutional litigation." (Pet. Obj. at 5-6).

However, even if Petitioner did present this claim to the Appellate Division on direct appeal, there is no indication in the record that he fairly presented it in his application for leave to appeal to the New York Court of Appeals.  The one-page application itself makes no mention of any specific grounds upon which Petitioner was appealing the Appellate Division's decision. (App., Ex H. at 1).  Moreover, while his <u>Pro Se</u> Supplemental

Brief in Support of his application claimed that the jury charge

was "unbalanced in favor the prosecutor" and failed to instruct

the jury on how to evaluate circumstantial evidence (App., Ex H

at 15-16), such defects are clearly distinct from the defect

Petitioner raises in his habeas petition, which concerns the way

the trial judge instructed the jury on the "reasonable doubt"

standard of proof.  Finally, the fact that Petitioner attached

his Appellate Division brief to his application for leave to

appeal does not by itself constitute fair presentation of the

claims raised in such brief to the Court of Appeals. <u>See</u> <u>Grey v.</u>

<u>Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991) (holding that Court of

Appeals was "not presented" with claims that were raised in

habeas petitioner's Appellate Division brief attached to his

application for leave to appeal but were not mentioned in the

application itself); <u>Jordan v. Lefevre</u>, 206 F.3d 196, 198-99 (2d

Cir. 2000) (same).

Having failed to present his defective jury charge claim to

New York's highest court on direct appeal, Petitioner is

procedurally barred from now obtaining review in that court

either by means of a post-judgment motion or a second application

for leave to appeal. <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c);

N.Y. Rules of Court, Court of Appeals, § 500.10(a); <u>Spence v.</u>

<u>Superintendent, Great Meadow Corr. Fac.</u>, 219 F.3d 162, 170 (2d

Cir. 2000) (citations omitted).  Therefore, Judge Francis is correct that Petitioner has procedurally defaulted on his defective jury charge claim, and, having provided no cause for such default, is precluded from obtaining federal habeas review of such claim.  See Gray, 518 U.S. at 162.

D.    Procedural Default of Insufficient Evidence Claim

Petitioner also objects to Judge Francis' finding that he procedurally defaulted on his insufficient evidence claim by failing to present it to the Appellate Division and Court of Appeals.  Again, Petitioner contends that he in fact fairly presented such claim to both courts by alleging in his Appellate Division brief "a pattern of facts that is well within the mainstream of constitutional litigation" on the issue sufficiency of evidence. (Pet. Obj. at 7).

Petitioner's brief to the Appellate Division and his Supplemental Brief in Support of his application for leave to appeal to the Court of Appeals each include a claim that his conviction was based on uncorroborated accomplice testimony in violation of New York Criminal Procedure Law § 60.22. (App., Exs. C at 190-202, H at 6-14).  However, as discussed in Part I.A. supra, while uncorroborated accomplice testimony may be an insufficient basis for a criminal conviction under New York State

law, there is no federal constitutional prohibition to convicting a criminal defendant solely on the basis of such testimony. <u>See Lisbena v. California</u>, 314 U.S. at 226-27; <u>see also</u> <u>United States v. Diaz</u>, 176 F.3d 52, 92 (2d Cir. 1999) ("Any lack of corroboration of an accomplice's or co-conspirator's testimony goes merely to the weight of evidence, not to its sufficiency, and a challenge to the weight is a matter for argument to the jury, not a ground for reversal on appeal.") (citations and internal quotations omitted), <u>cert. denied</u>, 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999). Thus, Petitioner's allegations about uncorroborated accomplice testimony in his submissions to the Appellate Division and Court of Appeals hardly constitute "a pattern of facts in the mainstream of constitutional litigation" on the issue of sufficiency of evidence.

Accordingly, as with his defective jury charge claim, Petitioner has procedurally defaulted on his insufficient evidence claim and, having provided no cause for doing so, is therefore precluded from obtaining federal habeas review of such claim. Petitioner's objection is without merit.

**E.  Merits of Batson Claim**

Petitioner also objects to Judge Francis' rejection of his Batson claim on the merits, arguing that the trial court and Appellate Division did unreasonably apply Batson by finding that Petitioner had failed to make a prima facie showing of discrimination with respect to the prosecution's peremptory challenges. (Pet. Obj. at 12).  Specifically, Petitioner contends that the prosecution's striking of four of the five prospective black jurors in the venire panel established a "pattern of discrimination" sufficient to make out a prima facie showing of a Batson violation. (Id.).

As with his judicial bias claim, because the Appellate Division ruled on the merits of Petitioner's Batson claim, he may only obtain habeas relief if the Appellate Division's ruling involved an "unreasonable application of clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).[3]  Yet, as Judge Francis correctly points out, there are no Second Circuit, much less Supreme Court, decisions squarely holding that a pattern of peremptory strikes similar to

---

[3] The Second Circuit has held that whether a state court violated Batson by ruling that the prosecution's pattern of peremptory strikes did not constitute a prima facie Batson violation does not implicate the "contrary to" prong, but only the "unreasonable application" prong of 28 U.S.C. § 2254(d)(1). See Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002).

that involved in Petitioner's trial by itself establishes a <u>prima</u> <u>facie</u> Batson violation,[4] and Petitioner does not cite any such cases in his objections to the Report.

Instead, Petitioner argues that his purported <u>prima facie</u> case of discrimination is not based solely on the number of peremptory strikes of black jurors by the prosecution. (Pet. Obj. at 7-8). Petitioner also points to the fact that the trial court "did not engage in the three-step analysis required by Batson" because it, rather than the prosecution, provided race neutral reasons for two of the four challenged black prospective jurors. (<u>Id.</u> at 12). However, Petitioner is falsely conflating the second-step of the <u>Batson</u> inquiry, the prosecution's provision of race-neutral explanations for its peremptory challenges, with the

---

[4] Indeed, the <u>Batson</u> Court itself merely held specified that while a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.," the trial court should consider "all relevant circumstances" in deciding whether the defendant has made the requisite prima facie showing of discrimination. <u>Batson v.</u> <u>Kentucky</u>, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Moreover, none of the Second Circuit cases cited by Petitioner in his Memorandum of Law in support of his Petition holds that a <u>prima facie</u> case of discrimination is established solely by the fact that four out of five prospective black jurors are stricken from a venire panel. <u>See</u> <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 249 (2d Cir. 1998) (<u>prima facie</u> case established when <u>all</u> black jurors in venire panel were stricken) (emphasis added); <u>Jordan v. Lefevre</u>, 206 F.3d at 200 (not deciding whether the peremptory strikes of three black jurors established a <u>prima</u> <u>facie</u> case of discrimination); <u>Overton v. Newton</u>, 295 F.3d 270 (2d Cir. 2002) (<u>prima facie</u> <u>Batson</u> violation not established by prosecution's peremptorily striking 7 out of 10 black prospective jurors in first two rounds of jury selection.

first-step, the establishment of a <u>prima facie</u> case of discrimination by the defendant. The fact that a trial court may have improperly proceeded through step two sheds no light on whether a criminal defendant has satisfied step one of the <u>Batson</u> inquiry. <u>See</u> <u>Jordan</u>, 206 F.3d at 200 (noting that trial court's ruling on race neutral reasons for peremptory strikes before defense counsel had opportunity to present argument as to <u>prima facie</u> case of discrimination "prevented a meaningful determination" on the latter question).

Accordingly, the Court agrees with Judge Francis that the Appellate Division and trial court's findings that Petitioner did not make a <u>prima facie</u> showing of discrimination were not unreasonable applications of clearly-established federal law, thereby precluding habeas relief for Petitioner on his <u>Batson</u> claim.

## F.    Merits of Conflict of Interest Claim

Petitioner objects to Judge Francis' rejection of his conflict of interest claim on two grounds. First, he argues that the existence of an actual conflict of interest between himself and his trial counsel is demonstrated by the court-ordered enhanced fee arrangement for his trial counsel which created the incentive for the latter to try the case to completion rather

than advise Petitioner to accept a plea bargain, and to advocate less zealously for Petitioner so as not to cause the trial judge to withhold compensation. (Pet. Obj. at 14, 16).

Again, because the Appellate Division ruled in Petitioner's direct appeal that the enhanced fee arrangement did not create a conflict of interest between Petitioner and his trial counsel (see App., Ex. G at 71-72), this Court will not disturb such ruling unless it was "contrary to, or involved an unreasonable application of, clearly established Federal Law." 28 U.S.C. § 2254(d)(1). The Supreme Court has specified that an actual conflict of interest exists between an attorney and his criminal defendant client "when, during the court of the representation, the attorney's and defendant's interests "diverge with respect to a material factual or legal issue or to a course of action." Cuyler v. Sullivan, 446 U.S. 335, 356 n.3, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (same) (quoting Cuyler), cert. denied, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994).

In support of his argument that the enhanced fee arrangement in and of itself created an actual conflict of interest, Petitioner cites Winkler v. Keane, in which the Second Circuit held that a contingency fee agreement under which a criminal attorney was to receive an additional $25,000 only if his client

was acquitted created an actual conflict of interest because the attorney "had a disincentive to seek a plea agreement, or to put forth mitigating defenses that would result in conviction of a lesser included offense."  7 F.3d at 308.   However, the agreement at issue in Winkler differs from the enhanced fee arrangement set up for Petitioner's trial counsel by the trial court in two important respects.  First, while a criminal defense attorney's "acceptance of a contingency fee agreement for representing a criminal defendant is highly unethical and deserves the strongest condemnation," Winkler, 7 F.3d at 308, the enhanced fee arrangement presently at issue was established pursuant to New York County Law § 722-b, which sets normal compensation rates for court-appointed attorneys but authorizes trial courts, in extraordinary circumstances, "to provide compensation in excess of the foregoing limits."  Thus, the very purpose of the enhanced fee arrangement was to ensure the Petitioner, an indigent defendant, received effective representation during his criminal trial.  Second, given the hourly compensation rate of $65 provided for in the enhanced fee arrangement, the financial incentive for Petitioner's counsel to try his case to completion rather than pursuing plea negotiations was surely less than the $25,000 that the attorney in Winkler stood to gain from pursuing an acquittal.  Thus, the Appellate

Division's finding that the enhanced fee arrangement did not
create a conflict of interest for Petitioner's trial counsel was
not contrary to or an unreasonable application of <u>Winkler</u>, much
less any Supreme Court precedent, and, as such, will not be
disturbed by this Court.  <u>See also</u> <u>Deleon v. Duncan</u>, 2002 WL
1997892, at *4 (rejecting identical conflict of interest claim of
one of Petitioner's co-defendant).

In the alternative, Petitioner argues that Judge Francis
should not have rejected his conflict of interest claim without
affording him an evidentiary hearing. (Pet. Obj. at 13).  Citing
<u>Eze v. Senkowski</u>, 321 F.3d 113 (2d Cir. 2003), Petitioner
contends that Judge Francis should have "offer[ed] [his] attorney
the opportunity to explain what effect, if any, the compensation
arrangement had on his level of performance." (<u>Id.</u> at 16-17).
However, Petitioner's reliance on <u>Eze</u> is misplaced.  In <u>Eze</u>, the
Second Circuit merely held that a district court could not <u>grant</u>
habeas relief for ineffective assistance of counsel without
holding an evidentiary hearing to permit the petitioner's trial
counsel to explain her trial strategy. 321 F.3d at 112-113.  <u>Eze</u>
cannot reasonably be read to require that a district court always
hold an evidentiary hearing before finding an ineffective
assistance of counsel claim meritless. <u>See</u>, <u>Rodriguez v. New
York</u>, No. 01 Civ. 9374, 2002 WL 31251007, at *2 n.2 (S.D.N.Y.

Oct. 8, 2002) ("[T]he requirement of inviting a response from counsel does not apply to every one of the voluminous number of claims of ineffective assistance of counsel that come before a district judge, but only to those sufficiently serious that there is a real possibility that the claim may be upheld.") (quoting <u>Jolaoso v. United States</u>, 142 F.Supp.2d 306, 308 n.2 (E.D.N.Y. 2001)).[5]

Accordingly, the Court agrees with Judge Francis that Petitioner's conflict of interest claim is without merit.

G.   Merits of Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner objects to Judge Francis' rejection of his ineffective assistance of appellate counsel claim on the merits, again citing **Eze v. Sankowski** and arguing that Judge Francis should have held a hearing "to offer [Petitioner's appellate counsel] the opportunity to explain why she did not present [his right to a public trial] claim on direct appeal." (Pet. Obj. at 17).  As stated above, because <u>Eze</u> does not require

---

[5] To the extent Petitioner claims to be entitled to a hearing under <u>Armienti v. United States</u>, 234 F.3d 820 (2d Cir. 2000), because he has made out a "plausible" conflict of interest claim (Pet. Obj. at 15), such argument also fails because <u>Armienti</u> dealt with the right to hearing on a motion brought under 28 U.S.C. § 2255, which explicitly requires a hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  In contrast, § 2254 has no such mandatory hearing provision.

that a habeas court hold a hearing before denying an ineffective assistance of counsel claim, Petitioner's objection is meritless.

## II. CONCLUSION

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Francis is hereby APPROVED, RATIFIED, and ADOPTED IN PART, and MODIFIED as follows:

(1)     The trial court rather than the prosecution offered race neutral reasons for the peremptory strikes of two prospective black jurors during jury selection for Petitioner's state criminal trial;

(2)     Petitioner did not procedurally default on his judicial bias claim;

(3)     Petitioner's judicial bias claim is denied on the merits;

(4)     The Court adopts Judge Francis' remaining findings and recommendations in their entirety.

Accordingly, Petitioner's Petition for a Writ of Habeas Corpus is DISMISSED in its entirety. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2); <u>United States v. Perez</u>, 129 F.3d 255, 259-60 (2d Cir. 1997), <u>cert. denied</u>, 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 318

(1998). The Clerk of Court is directed to close the docket in the above-captioned case.

SO ORDERED

DATED:    New York, New York
          August 4 , 2005

_Deborah A. Batts_
Deborah A. Batts
United States District Judge